UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| JENNIFER JO BRADDOM, ) | |
| ) | |
| Plaintiff, ) | Case No. 2:15-cv-00009 |
| ) | Judge Sharp |
| v. ) | |
| ) | |
| CAROLYN W. COLVIN ) | |
| Acting Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the Court is Plaintiff's *Motion for Judgment on the Administrative Record* (Docket Entry No. 11). The motion has been fully briefed by the parties.

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for disability insurance under Title II, as provided by the Social Security Act ("the Act"). Upon review of the administrative record as a whole and consideration of the parties' filings, the Court finds that the Commissioner's determination that Plaintiff is not disabled under the Act is supported by substantial evidence in the record as required by 42 U.S.C. § 405(g). Plaintiff's motion will be denied.

## I. INTRODUCTION

Plaintiff, Jennifer Jo Braddom, filed a Title II application for a period of disability and disability insurance on August 26, 2011, alleging disability as of May 31, 2009. (Tr. 156). The claim was denied at the initial level on November 9, 2011 (Tr. 111-113) and on reconsideration on January 11, 2012. (Tr. 114-115). Thereafter, she filed a timely written request for hearing

1

dated February 23, 2012. (Tr. 120). On May 15, 2013, a video hearing was held. (Tr. 74-108). On August 14, 2013, the ALJ issued a decision denying Plaintiff's claim. (Tr. 50-69). Plaintiff filed a Request for Review of Hearing Decision on October 9, 2013. (Tr. 47-48). On December 6, 2014, the Appeals Council issued an order denying the Request for Review. (Tr. 1-7). *See* (Docket Entry No. 11 at p. 1). This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II. THE ALJ FINDINGS

The ALJ issued an unfavorable decision on August 15, 2013. (AR p. 50). Based upon the record, the ALJ made the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 20, 2014.

2. The claimant has not engaged in substantial gainful activity, since May 31, 2009, the alleged onset date (20 CFR 404.1571 *et seq*. and 416.971 *et seq*.).

3. The claimant has the following severe impairments: diabetes, status post lumbar laminectomy with microdiscectomy, rheumatoid arthritis, recurrent kidney stones, borderline intellectual functioning depressive disorder (20 CFR 404.1520(c).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can perform frequent postural movements and cannot tolerate exposure to temperature extremes, wetness or humidity or vibration. She is able to perform simple tasks, adapt to gradual and infrequent changes in her work routine, maintain concentration and persistence for simple tasks and is limited to work that requires occasional interaction with the public and coworkers and supervision that is direct and nonconfrontational.

6. The claimant is capable of performing past relevant work as a gluer. This work does not require the performance work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

2

7. The claimant has not been under a disability, as defined in the Social Security Act, from May 31, 2009, through the date of this decision (20 CFR 404.1520(f).

(AR pp. 55-65).

## III. REVIEW OF THE RECORD

The following summary of the evidence of record is taken from Plaintiff's brief, Docket Entry No. 12 at pp. 2, 13-16:

> Jennifer Jo Braddom was born on January 26, 1971 and was 42 years old at the time of her hearing. (Tr. 78). She has a high school education and was in special education classes. She has no additional vocational training. Her work history includes working for White County as a custodian in 2002; working at Tri State Distribution as a gluer in 2003; working at Food Lion as a stocker in 2003; working at Sequatchie County Board of Education as a custodian in 2004; and her last work was at Fixture World in Cookeville where she left in May of 2009 because she was no longer able to work due to back pain and kidney stones. (Tr. 81-83).
>
> ***
>
> **Hearing Testimony**
> Ms. Braddom testified that she is unable to work due to back pain, kidney stones and arthritis. She had surgery on her back in December 2011 which helped the sciatic nerve and decreased the intensity of her back pain but did not relieve it completely. She rated her pain a 9+ prior to surgery and a 4 or 5 following surgery. (Tr. 83-84).
>
> She testified that she had arthritis and was treated for it by Dr. Gore, rheumatologist. She last saw Dr. Gore two months prior to the hearing and was due to return on June 1, 2013. (Tr. 84). Dr. Gore treated her with Methotrexate, Humira, Folic Acid, and Hydro chloroquine. Humira helped but caused trouble with her right knee. At times it looked like there was an egg by her kneecap. She rated her daily pain from arthritis a 7 of 10 and a 10 of 10 when it was raining. (Tr. 84-85).
>
> She testified that she took Paxil for depression and anxiety at one time and that she was taking Trazadone for sleep at the time of the hearing, prescribed by Dr. Gotcher. (Tr. 85-86).
>
> She testified that her husband owned a farm seven miles from their home. She tried to mow it at times but had not been able to do that in a while because the lawn mower jarred her kidney stone and made it too difficult. She had not been

able to work on the farm for two years. She would feed and watch the horses at times, but her husband took care of the fields with a tractor. There were really not stalls to clean because they would run in the fields. (Tr. 86-87).

She testified that she had kidney stones on a regular basis. She described the kidney stones as a really bad pain in the flank on her sides. She could feel them cutting and at times she urinated blood. She was on Hydrochlorothiazide which helped flush the kidneys. She also took Calcium Citrate which helped lessen the flare ups. She had been passing them on her own since taking Calcium Citrate but they still did the same cutting. She suffers from kidney stones 10 to 15 days out of the month and the pain was pretty severe. She rated her pain a 6 or 7 on a good day and a 10+ on a bad day. (Tr. 87-88).

Ms. Braddom testified that on a typical day, she will stay inside if the weather is bad unless she has to go feed the horses. She typically stayed at home and cooked and cleaned with the help of her 16-year old daughter. She grocery shops, but she has pain getting things like sodas to the car. She can lift 10 ponds without pain. She testified that she will sweep and vacuum. She tried to get her daughter to do the vacuuming. She folds laundry. Her daughter has to clean the bathroom because it is too painful to get down and scrub the tub. On a good day she will mow the yard and that happened once every month or possibly longer. She testified that they had two dogs, five horses, and one baby on the way. The horses eat grain, hay and grass and she tried to feed them twice a day. She takes her daughter to school and to practices and to some of her home games but tries to get someone else to take her to the away games. She attends church every week. She was a runner at one time but could no longer run because she would get active kidney stones flared up. She tried to walk at times. Her only hobby was her horses. She used to ride competitively at one time, but she was no longer able to do either. She could sit or stand 10 to 15 minutes at a time and then had to change positions. She could walk 15 to 20 minutes at a time. She testified that she knew she could lift a 50 pound bag but it hurt her so bad she could not stand it. She would not want to do that constantly. (Tr. 89-92).

She described the pain in her lower back as aching like when you hit a funny bone. She can lay down on her right side to help the pain. She only sleeps around 4 hours a night and then must get up. Her pain is really bad on damp and rainy days. She has difficulty with gripping things. She has a lot of trouble opening things like little crackers or a soft drink bottle. The motion of brushing her teeth or hair really hurts her wrist. (Tr. 93-94).

Her back had hurt since she was a little girl. She thought it was from playing basketball but it had hurt since childhood. Her father has rheumatoid arthritis. (Tr. 94). On a good day she feels much better than on a kidney stone day but her back hurts on days when she does not have kidney stones. When she does have kidney stones, she has nausea and vomiting. She throws up and that's when she knows it's time to go to the hospital. She has about ten days a month that are average,

run of the mill kidney stone days and then about two or three days where the kidney stones completely put her down and she has to lay down and be very still to make them stop moving. (Tr. 95). She tries to lay down almost every day and she attributes it to being really tired from not sleeping. She will lie down an hour to an hour and a half daily. She has been advised to drink a lot of water to help push the kidney stones out and because she is a diabetic. She feels her kidney stones get "hung up" instead of flushed out. She has been told they get hung because she has jagged edged kidney stones. She testified "I drink plenty of water I feel like. I think a lot of that has got to do with my parathyroid and I have to talk to them about that but no one suggests that I'm a candidate for that." (Tr. 96). The kidney stones had been more frequent in the last two years as compared to the last five years. They had gotten smaller as well. (Tr. 97).

She testified that she had to spread her chores out throughout the day. She would have to sit down and take breaks when washing dishes. It was impossible for her to do it all at once. (Tr. 97).

She testified the she had small buckets and she will put horse feeding a bucket, stir it up and take it to them and put it in their feed trough. She will go back and do that with all of the horses. The feed bucket weighs between 5 and 10 pounds and she does this with 5 horses. This takes 30 minutes without watering the horses. When she waters the horses she has a hose that reaches the troughs. (Tr. 98).

## IV. DISCUSSION AND CONCLUSIONS OF LAW

**A. Standard of Review**

The determination of disability under the Act is an administrative decision. The only questions before this Court are: (i) whether the decision of the Commissioner is supported by substantial evidence; and (ii) whether the Commissioner made any legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

Substantial evidence has been defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*,

402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)).

The Court must examine the entire record to determine if the Commissioner's findings are supported by substantial evidence. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir.1991). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and final determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

**B. Determining Disability at the Administrative Level**

The claimant has the ultimate burden of establishing her entitlement to benefits by proving her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d) (1)(A). The asserted impairment(s) must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(D); 20 CFR §§ 404.1512(a), (c), 404.1513(d). "Substantial gainful activity" not only

includes previous work performed by the claimant, but also, considering the claimant's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which the claimant lives, or whether a specific job vacancy exists, or whether the claimant would be hired if she applied. 42 U.S.C. § 423(d)(2)(A).

In the proceedings before the Social Security Administration, the Commissioner must employ a five-step, sequential evaluation process in considering the issue of the claimant's alleged disability. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must show that she is not engaged in "substantial gainful activity" at the time disability benefits are sought. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007); 20 CFR §§ 404.1520(b), 416.920(b). Second, the claimant must show that she suffers from a severe impairment that meets the twelve month durational requirement. 20 CFR §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 F. App'x 83, 85 (6th Cir. 2004). Third, if the claimant has satisfied the first two steps, the claimant is presumed disabled without further inquiry, regardless of age, education or work experience, if the impairment at issue either appears on the regulatory list of impairments that are of sufficient severity as to prevent any gainful employment or equals a listed impairment. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 CFR §§ 404.1520(d), 416.920(d). A claimant is not required to show the existence of a listed impairment in order to be found disabled, but such a showing results in an automatic finding of disability that ends the inquiry. *See Combs, supra*; *Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

If the claimant's impairment does not render her presumptively disabled, the fourth step evaluates the claimant's residual functional capacity in relationship to her past relevant work. *Combs, supra*. "Residual functional capacity" ("RFC") is defined as "the most [the claimant] can still do despite [her] limitations." 20 CFR § 404.1545(a)(1). In determining a claimant's RFC, for purposes of the analysis required at steps four and five, the ALJ is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir.1988). At the fourth step, the claimant has the burden of proving an inability to perform past relevant work or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474. If the claimant cannot satisfy the burden at the fourth step, disability benefits must be denied because the claimant is not disabled. *Combs, supra*.

If a claimant is not presumed disabled but shows that past relevant work cannot be performed, the burden of production shifts at step five to the Commissioner to show that the claimant, in light of the claimant's RFC, age, education, and work experience, can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). In order to rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a claimant can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428, 77 L. Ed. 2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the

Commissioner of carrying his burden under appropriate circumstances). Even if the claimant's impairments prevent the claimant from doing past relevant work, if other work exists in significant numbers in the national economy that the claimant can perform, the claimant is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the five-step sequential evaluation process, the claim is not reviewed further. 20 CFR § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a claim at step two of the evaluative process is appropriate in some circumstances).

### C. Plaintiff's Assertion of Error

Plaintiff argues that the ALJ erred (1) in the weight given to the medical opinions and (2) in his evaluation of Plaintiff's subjective allegations. Plaintiff contends that the Commissioner's decision should be reversed and/or remanded for review. (Docket Entry No. 12 at p. 23).

Sentence four of 42 U.S.C. § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3). "In cases where there is an adequate record, the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Additionally, a court can reverse the decision and immediately award benefits if all essential

factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994). Plaintiff's assertion of error is addressed below.

*1. The ALJ erred in the weight given to the report of Jane Gotcher, M.D.*

Plaintiff contends that the ALJ erred in rejecting the opinion of treating physician Jane Gotcher, "who described limitations that would not allow [Plaintiff] to perform substantial gainful activity, even at the sedentary level." (Docket Entry No. 12 at 17). In support, Plaintiff makes the following arguments:

> Dr. Gotcher's opinion is sufficiently supported by medical findings, and the Administrative Law Judge erred in rejecting it. The ALJ gave Dr. Gotcher's assessment "little weight" since it is inconsistent with recent improvement in musculoskeletal problems, as well as the claimant's wide range of regular activities inconsistent with Dr. Gotcher's assessment. (Tr. 63). However, Dr. Gotcher's record contains objective evidence to support her opinion. She continuously diagnosed Ms. Braddom with low back pain, kidney problems and rheumatoid arthritis.
>
> Dr. Gotcher was Ms. Braddom's primary care provider from March 2009 through the date of the hearing. (Tr. 314). On March 18, 2010, Ms. Braddom had some left flank tenderness, mild, consistent with her kidney issues. (Tr. 307). On June 8, 2010, Ms. Braddom was treated for continued stress and recurrent kidney stones. (Tr. 304). On November 17, 2010 and November 22, 2010, Ms. Braddom was assessed with severe back strain, whiplash injury, rib pain and back pain, and was treated with Cataflam for inflammation and Ultram for pain. (Tr. 303). On May 9, 2011, Dr. Gotcher gave Ms. Braddom Toradol and Decadron injections, a Medrol Dose Pak, Zanaflex and Diclofenac 75 mg twice daily for pain. (Tr. 301). In June 2011, a family history of rheumatoid arthritis was noted and UTI, possible mild kidney stone, and diabetes were found. (Tr. 300). X-rays of the lumbar spine taken on June 3, 2011 revealed partial lumbarization of S1 with fusion to the sacral ala on the left, possibly associated with back pain. (Tr. 341-342). On July 18, 2011, Dr. Gotcher prescribed MS Contin 30 mg twice daily. (Tr. 299). On August 8, 2011, her chronic back pain and leg pain continued in addition to recurrent kidney stones. (Tr. 299).
>
> On August 18, 2011, MRI ordered by Dr. Gotcher revealed mild L4-L5 disc degeneration with broad based disc bulge and left eccentric herniation into the left foramen, with impingement upon the exiting left nerve root and moderate left

facet arthropathy. There was mild crowding of the right existing nerve root secondary to the disc bulge. (Tr. 343-344).

Dr. Gotcher referred Ms. Braddom to Dr. Joseph Jestus, neurosurgeon, who assessed Ms. Braddom with lumbar region disc disorder and lumbar disc herniation with a left sided foraminal disc herniation at L4/5, non-symptomatic. Additionally, possible ankylosing spondylitis was noted. (Tr, 409-412). Due to continued radicular symptoms, a second neurological referral was given. (Tr. 296). In December 2011, Dr. Clinton James Devin performed L4-L5 micro discectomy for Ms. Braddom. (Tr. 361).

Along with Dr. Gore, Dr. Gotcher has prescribed medication for rheumatoid arthritis including Methotrexate Sodium 2.5 mg on May 12, 2012 (Tr. 420), Hydroxychloroquine 200 on June 18, 2012, (Tr. 420), and Medrol Dosepak on July 26, 2012 (Tr. 429), and Methotrexate 5 mg per week continued and HCQ 200 mg, biweekly Humira restarted in December 2012. (Tr. 427). Dr. Gotcher has additionally performed blood tests for Rheumatoid arthritis, (Tr. 427).

Dr. Gotcher's opinion is supported by Dr. James Gore who has also treated Mr. Braddom for her rheumatoid arthritis. On August 17, 2011, Ms. Braddom saw rheumatologist Dr. James Gore for consultation regarding arthritis upon referral by Dr. Gotcher. (Tr. 259-260, 416).

Dr. Gotcher has had a long term relationship with her patient and as cited above has noted her kidney problems, back pain and rheumatoid arthritis throughout her treatment records. Dr. Gotcher's assessment is consistent with the medical evidence and with Ms. Braddom's hearing testimony. It is only contradicted in the record by the reports of non-examining reviewing physicians, Dr. Frank Pennington, (Tr. 372-380), whose report, the ALJ only gave some weight to because it was overly restrictive (Tr. 62) and Dr. Lina Caldwell, (Tr. 264-269) whose report was rejected by the ALJ. (Tr. 62). The Administrative Law Judge erred in rejecting Dr. Gotcher's opinion.

(*Id*. at pp. 17-20). Specifically, as to Dr. Gotcher, the ALJ found the following:

The claimant's treating physician, Dr. Gotcher, stated in November of 2009 that the claimant was "unable to work a regular job" because of her history of kidney stones. []. The nature of this opinion is improper since it pertains to an issue that is reserved to the Commissioner. []. It is also vague and unhelpful, as it fails to provide a specific assessment of the claimant's limitations or to define what a regular job is. For these reasons, it is given little weight. Dr. Gotcher provided another opinion that set forth specific limitations in which she is essentially opine[]s that the claimant would be capable of les than the full range of sedentary exertion and would require frequent, unscheduled rest breaks and be absent from work more than four times a month. []. This opinion is also given little weight since it is inconsistent with medical records that show recent improvement in musculoskeletal problems, as well as the claimant's wide range of regular

11

activities, which demonstrate capabilities that far exceed those estimated by Dr. Gotcher.

(AR at pp. 62-63).

It is the function of the ALJ to resolve the conflicts between the medical opinions. *Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 588 (6th Cir. 2013) ("In a battle of the experts, the agency decides who wins. The fact that Justice now disagrees with the ALJ's decision does not mean that the decision is unsupported by substantial evidence."). Under SSR 96-7p, the ALJ is permitted to "consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements." *Se*e SSR 96-7p; *Blankenship v. Comm'r of Soc. Sec.*, No. 14-2464, 2015 WL 5040223, at *10 (6th Cir. Aug. 26, 2015) (treating doctor's assertion that claimant was unable to walk from the parking lot to work was "seemingly contradicted by the fact that Blankenship was able to walk unassisted from her car to the room where the hearing was being held."). The ALJ may rely on opinions from consulting doctors. *See Brown v. Comm'r of Soc. Sec.*, No. 14-1626, 2015 WL 163059, at *1 (6th Cir. Jan. 13, 2015) ("The ALJ gave 'some weight' to the opinions of three consulting physicians…"). While all medical opinions are evaluated as discussed in 20 C.F.R. § 404.1527, opinions by consulting or non-treating doctors need not be evaluated in accordance with the treating physician rules outlined by the Sixth Circuit. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x at 730 (citing 20 C.F.R. § 404.1527 and *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

The Court finds that the ALJ properly analyzed Dr. Gotcher's opinion as well as the competing opinions. Accordingly, the Court finds that substantial evidence supports the ALJ's determination as to Plaintiff's residual functional capacity.

*2. The ALJ erred in rejecting Plaintiff's complaints of disabling pain and failing to properly evaluate her credibility.*

Plaintiff argues that the ALJ did not appropriately evaluate Plaintiff's pain and resulting restrictions. (Docket Entry No. 12 at 20). In support, she asserts the following:

> The level of activity of Ms. Braddom found by the ALJ is not inconsistent with the pain alleged. Moreover, the ability to do simple activities such as driving, shopping, or sweeping has been held not to indicate an ability to perform substantial gainful activity when the activities are done on an intermittent basis due to pain.
>
> Ms. Braddom tried to mow at the farm but had not been able to do that in a while because the lawn mower jarred her kidney stone and made it too difficult. (Tr. 86-87).
>
> Although she mows her yard, she does it no more than once a month when she has a good day. (Tr. 90). She grocery shops, but she has pain getting things like sodas to the car. She can lift 10 pounds without pain. (Tr. 89). Her daughter has to clean the bathroom because it is too painful to get down and scrub the tub. (Tr. 89). She takes her daughter to school and to practices and to some of her home games but tries to get someone else to take her to the away games. (Tr. 92). She can sit or stand 10 to 15 minutes at a time and then has to change positions. She can walk 15 to 20 minutes at a time. (Tr. 92). She lies down for an hour to an hour and one-half per day. (Tr. 96).
>
> Substantial evidence does not support a conclusion that Ms. Braddom is able to sustain substantial gainful activity on a regular and continuing basis. To the contrary, the evidence supports the conclusion that Ms. Braddom is not able to work under normal conditions.
>
> Ms. Braddom has had unrelenting pain. Her pain is supported by reports of her treating primary care provider, urologists and rheumatologist. In evaluating Ms. Braddom's pain, the Administrative Law Judge failed to give adequate consideration and weight to evidence favorable to the plaintiff. Overall, the evidence is consistent with Ms. Braddom's complaints of pain and functional limitations. Substantial evidence does not support the Administrative Law Judge's decision to discount the severity of Ms. Braddom's pain and its effect on her functionally.
>
> Ms. Braddom rated her back pain as a 9+ prior to surgery and a 4 or 5 following surgery. (Tr. 83-84).
>
> She rated her daily pain from arthritis a 7 of 10 and a 10 of 10 when it was raining. (Tr. 84-85).

> She testified that she had kidney stones on a regular basis. She suffers from kidney stones 10 to 15 days out of the month and the pain was pretty severe. She rated her pain a 6 or 7 on a good day and a 10+ on a bad day. (Tr. 87-88).

(*Id*.). The ALJ found the following with respect the Plaintiff's alleged pain and credibility:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged *some* of the symptoms; however the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.
>
> With respect to the claimant's allegations of widespread pain, the records demonstrates complaints of back pain dating back to a treatment note from May of 2011, which notes the claimant is experiencing an exacerbation of chronic back pain. []. Despite this notation regarding chronic back pain, a review of previous treatment notes fails to demonstrate ongoing problems with the claimant's back. In fact, in November of 2010, there is a note that the claimant was thrown from her horse a week ago, that she landed on her back and neck, is sore and uncomfortable, but otherwise "in good spirits."
>
> In mid-2011, the claimant did begin to complain fairly regularly about back pain.
>
> \*\*\*
>
> Later in the month of December of 2011 (three weeks after her surgery), the claimant visited her neurosurgeon and reported that her back was "80% improved." []. She reiterated in March of 2010, that she was "doing very well… [and was] 80% improved."
>
> \*\*\*
>
> It appears then that the claimant experiences mild symptoms of rheumatoid arthritis, back pain, dramatically improved with surgery, and some intermittent kidney stones. However, the claimant's daily activities demonstrate capabilities that belie her assertions of disabling physical problems. As discussed, the claimant cares for her five horses and two dogs, performs household chores, including mowing, shops, goes to church frequently and drives her daughter to activities and school multiple times a day. The undersigned finds that the combination of these physical problem[s] limit the claimant to less than the full range of light exertion with frequent postural movements and no exposure to wet conditions, temperature extremes or vibration because of their likely effect on her physical pain.

(AR at pp. 59-61).

In analyzing her credibility, the ALJ found that many of Plaintiff's symptoms improved with treatment, and her daily activities indicate that her pain was not as severe as alleged (Tr. 56, 59, 61, 86, 89-91, 97-98, 184-85). The evaluation of Plaintiff's alleged symptoms rests with the ALJ, and "[a]s long as the ALJ cite[s] substantial, legitimate evidence to support his factual conclusions, we are not to second-guess." *Ulman v. Comm'r of Soc. Admin.*, 693 F.3d 709, 713–14 (6th Cir. 2012). The ALJ may consider daily activities as one factor in the evaluation of subjective complaints. *See Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013) ("Further, the ALJ did not give undue consideration to Temples' ability to perform day-to-day activities. Rather, the ALJ properly considered this ability as one factor in determining whether Temples' testimony was credible."); 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p.

Here, the ALJ's evaluation of Plaintiff's credibility is supported by substantial evidence in the record. Consequently, the ALJ's decision is conclusive and must be affirmed. *Warner v. Comm. Of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

## V. CONCLUSION

In sum, the Court concludes that the findings of the ALJ are supported by substantial evidence on the record as a whole, and are free from legal error. With such support, the ALJ's decision must stand, even if the record also contains substantial evidence that would support the opposite conclusion. *E.g., Longworth c. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).

For all of the reasons stated, the Court will deny Plaintiff's *Motion for Judgment on the Administrative Record* (Docket Entry No. 11).

An appropriate Order shall be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE